UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACQUELINE ANDERSON,<br><br>Defendant. | Case No.: CR 19-00157-CJC<br><br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL [Dkt. 59]** |

**I. INTRODUCTION**

The government charged Defendant Jacqueline Anderson with threatening to assault or murder an "official" in violation of 18 U.S.C. § 115(a)(1)(B). (Dkt. 1 [Indictment, hereinafter "Ind."].) After a two-day trial, a jury found Anderson guilty. (Dkt. 60.) Anderson now moves for a judgment of acquittal under Rule 29 of the Federal

Rules of Criminal Procedure. (Dkt. 59 [hereinafter "Mot."].) Anderson argues that she is entitled to acquittal because the individual she threatened was not an "official" as defined by § 115. For the following reasons, Anderson's motion is **DENIED**.[1]

## II. BACKGROUND

The Indictment charged Anderson with one count of violating 18 U.S.C. § 115(a)(1)(B), which makes it unlawful to threaten to assault or murder certain "officials" and "officers." For the purposes of this motion, the relevant facts are undisputed. On December 12, 2018, Anderson had an altercation with Protective Security Officer Justin Bacchus. Officer Bacchus is an employee of Paragon Systems. (Dkt. 73 [Transcript 2/4/2020] at 5.) Paragon Systems has a contract with the Federal Protective Service ("FPS")—an agency of the Department of Homeland Security—to provide security services at government-owned and leased properties. (Dkt. 74 [Transcript 2/5/2020] at 19–20.) Protective security officers like Officer Bacchus receive extensive training, including field training on the use of force and firearms. (Transcript 2/4/2020 at 6–8.) They are authorized to carry weapons, operate x-ray machines, and screen visitors to federal buildings. (*See id.*) Ultimately, their responsibility is to ensure that federal employees can do their jobs safely. (*See* Transcript 2/5/2020 at 11–12.)

On the day of the incident, Officer Bacchus was stationed at the Long Beach field office of the Social Security Administration ("SSA"). (Transcript 2/5/2020 at 19–20.) Anderson attempted to enter the office in front of a long line of visitors. (Transcript 2/4/2020 at 23–24). After confirming that she did not have an appointment, Officer Bacchus told Anderson that she would have to wait in line. (*Id.*) This led to a series of arguments, and Anderson eventually shouted at Officer Bacchus, "I'm going to my car to

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Crim. P. 57(b).

get my gun to kill you, and blow your fucking brains out." (*Id.* at 10–14, 50–55.) She then got into her car and drove away. (*Id.* at 58.) After a two-day jury trial, Anderson was found guilty of threatening to assault and murder Officer Bacchus in violation of 18 U.S.C. § 115(a)(1)(B). (Dkt. 60, 65.)

## III.  LEGAL STANDARD

On a motion for judgment of acquittal, the Court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Reed*, 575 F.3d 900, 923 (9th Cir. 2009) (quoting *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001)) (emphasis in original). A judgment of acquittal is warranted if "the government's proof was insufficient as a matter of law to constitute a crime." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010) (quoting *United States v. Moore*, 84 F.3d 1567, 1568 (9th Cir. 1996)).

## IV.  ANALYSIS

Anderson's motion poses a pure question of law. The Court must determine whether a private security officer contracted to protect federal employees is an "official" under 18 U.S.C. § 115(a)(1)(B). The Court begins with the text of the statute.

Section 115 makes it unlawful to "threaten[] to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under [18 U.S.C. § 1114]." 18 U.S.C. § 115(a)(1)(B).[2]

---

[2] The threat must also have been made "with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of

The government contends that Officer Bacchus fell under the fourth category as "an official whose killing would be a crime under [§ 1114]." *See id.* Section 1114 prohibits killing or attempting to kill "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance." 18 U.S.C. § 1114.

The question posed by the instant motion is whether § 115(a)(1)(B) protects all of the "officers," "employees," and "persons" covered by § 1114 or, as Anderson argues, just the "officers" and "employees." Anderson's argument turns on the word "official." Section 115 applies to "an *official* whose killing would be a crime under [§ 1114]." 18 U.S.C. § 115(a)(1)(B) (emphasis added). Anderson argues that this term encompasses the "officer[s] or employee[s] of the United States" enumerated in §1114, but not the "person[s] assisting such officer[s] or employee[s]." The Court disagrees and finds that Officer Bacchus was a protected "official" at the time of the threat.

This appears to be a novel legal question. In *United States v. Bankoff*, 613 F.3d 358 (3d Cir. 2010), and *United States v. Wynn*, 827 F.3d 784 (8th Cir. 2016), two circuit courts considered the relationship between these two provisions, but in a different context. In those cases, the question posed was whether the "officials" protected by § 115 included low-ranking federal employees. *See Bankoff*, 613 F.3d 358; *Wynn*, 827 F.3d 784. The defendants argued that some federal employees lack sufficient authority to be considered "officials" and therefore fall outside the scope of § 115(a)(1)(B). Both courts rejected this argument. *See id.* Although the question at hand is somewhat different, the Court finds the reasoning in these cases instructive.

---

official duties." 18 U.S.C. § 115(a)(1)(B). Anderson does not challenge the jury's finding that she acted with the requisite intent. (*See* Mot.)

The term "official" is not defined by § 115.  Instead, it is used to refer to § 1114. The Court must therefore interpret "official" based on the structure and operation of *both* provisions.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole").  The Third Circuit adopted a similar approach in *Bankoff*.  It found that the structure of the two provisions "strongly suggests that Congress intended for § 1114 itself to define that category by incorporating it by reference into § 115."  *Bankoff*, 613 F.3d at 366.  The Court agrees and therefore turns to the substance of § 1114.

Section 1114 protects a broad swath of government actors, none of whom are referred to as "officials."  It covers "any officer or employee of the United States or of any agency in any branch of the United States Government" and "any person assisting such an officer or employee in the performance of such duties."  18 U.S.C. § 1114.  It uses the word "official," but only in reference to the "official duties" of these government actors.  *See id.*; *see also id.* § 115(a)(1) (referring to "official duties").  The scope of § 1114 recognizes the important role of privately contracted employees in the operations of the federal government.  *See United States v. Bedford*, 914 F.3d 422, 428 (6th Cir.), *cert. denied*, 139 S. Ct. 1366, 203 L. Ed. 2d 599 (2019) ("[I]t is well established that private employees who, subject to government contracts, perform work that federal employees would otherwise do, and, in doing so, further the interests of the federal government, fall within the ambit of § 1114.").  Indeed, the statute is said "to protect both federal officers and federal functions."  *See United States v. Murphy*, 35 F.3d 143, 146 (4th Cir. 1994) (quoting *United States v. Feola*, 420 U.S. 671, 679 (1975)); *see also United States v. Matthews*, 106 F.3d 1092, 1096 (2d Cir. 1997).

Based on this structure, the Third and Eighth Circuits determined that the term "official" in § 115 is not synonymous with "officer," as used in § 1114.  *Bankoff*, 613

F.3d at 366–67; *Wynn*, 827 F.3d at 784–85.  The Court agrees, and, for similar reasons, rejects Anderson's argument that "official" is synonymous with "officer or employee." *See* 18 U.S.C. §§ 115(a)(1)(B), 1114.  If Congress had intended to limit the scope of § 115 in this manner, it could have used clear language expressing that limit.  *See Bankoff*, 613 F.3d at 369–70 (finding it "implausible that Congress used the term 'official' as a limitation on the persons enumerated in § 1114, yet declined to define that term or provide any indication as to how courts (or, presumably, juries) were to determine" which government actors qualify as "officials").

Anderson next argues that, based on the "plain language" of § 115, Officer Bacchus cannot be considered an "official." (*See* Mot. at 3–4.)  According to Anderson, "[n]o reasonable interpretation of the term 'official' encompasses a private-sector employee." (*Id.* at 4.)  Once again, the Court disagrees.  *Webster's Dictionary* defines "official" as "a person authorized to act for a government, corporation, [or] organization."  *Webster's Third New Int'l Dictionary* 1566 (1971) (cited in *Bankoff*, 613 F.3d at 365).  It is unclear why this would exclude Protective Security Officer Bacchus.  At the time of the threat, Officer Bacchus was plainly authorized to act on behalf of the Federal Protective Service, even though he was privately employed.

Ultimately, the Court concludes that Officer Bacchus was a protected "official" under § 115 based on his authority to perform "official duties" in the service of federal interests.  The substantive elements of § 115 support the Court's interpretation.  To violate § 115(a)(1)(B), the accused must act "with intent to impede, intimidate, or interfere with such official . . . while engaged in the *performance of official duties*" or "with intent to retaliate against such official . . . on account of the *performance of official duties*." 18 U.S.C. § 115(a)(1)(B) (emphasis added).  In either case, the government actor must be performing "official duties" to be protected.  This is harmonious with the Court's functional approach to the term "officials."  The statute's application turns on the role,

responsibilities, and authority of the government actor. *See Murphy*, 35 F.3d at 146 (explaining that the purpose of § 1114 is "to protect both federal officers and federal functions"). This approach also precludes the absurd hypotheticals offered by Anderson—for example, "[a] woman visiting the Veterans Administration who opens the door to allow a clerk to bring an armful of papers into a building." (*See* Mot. at 6.) Unlike Officer Bacchus, this visitor is not authorized to act on behalf of the federal government and is not performing "official duties." *See* 18 U.S.C. § 115(a)(1).

The Court need not define the precise outer bounds of § 115's protections. In the case at hand, Officer Bacchus plainly exercised "official" authority and carried out "official duties" delegated to him by the federal government. Officer Bacchus received extensive training and was authorized to carry weapons, operate screening equipment, and deescalate conflicts with SSA visitors. (*See* Transcript 2/4/2020 at 6–8.) On the day of the incident, Officer Bacchus was carrying a firearm, a baton, pepper spray, and handcuffs. (*See id.*) He also worked closely with FPS agents. As Special Agent George Chapman explained, the FPS "do[es] not have enough officers to cover all of the properties [that] we're responsible for," and so the protective security officers are "essentially our eyes and ears." (Transcript 2/4/2020 at 20.) Ultimately, Officer Bacchus "serv[ed] precisely the same federal interest" as a federal employee in a similar role, *see Murphy*, 35 F.3d at 147, and was delegated substantial authority to fill that role. Accordingly, the Court finds that he was protected by § 115(a)(1)(B).

The legislative history of § 115 and § 1114 does not demand a contrary interpretation. As originally enacted in 1984, § 115 criminalized threats against an immediate family member of "a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under 18 U.S.C.

§ 1114."[3] In 1986, it was amended to cover the enumerated officials themselves. *See Bankoff*, 613 F.3d at 371 n.13.[4] At this point, § 1114 protected the "officers and employees" of dozens of federal agencies and departments, including "the Veterans' Administration (now the Department of Veterans Affairs), the Department of Agriculture, the Federal Depository Insurance Corporation, the Federal Communications Commission, and the National Aeronautics and Space Administration." *See Bankoff*, 613 F.3d at 368 (citing 18 U.S.C. § 1114 (1984)). Importantly, it also authorized the U.S. Attorney General to promulgate regulations to designate "any other officer or employee of the United States or any agency thereof . . . for coverage under this section." *Id.* Pursuant to that authority, in 1992, the Attorney General designated "[e]mployees of the Social Security Administration assigned to Administration field offices, hearing offices and field assessment offices" for coverage under § 1114. 28 C.F.R. § 64.2(x). In 1996, Congress simplified § 1114 to its current form, which refers to "any officer or employee of the United States or of any agency in any branch of the United States Government" and "any person assisting such an officer or employee in the performance of such duties."[5]

From the outset, Congress defined § 115's coverage by reference to § 1114. And it did so with the understanding that § 1114 scope was dynamic and rapidly expanding. As originally codified in 1948, § 1114 only protected seven types of "federal officers." 62 Stat. 756 (1948).[6] "[I]n the decades that followed Congress 'greatly expanded' the categories of persons protected by that provision." *Bankoff*, 613 F.3d at 368 (quoting *Feola*, 420 U.S. at 679 n.15). This occurred piecemeal as additional federal agencies

---

[3] Act of Oct. 12, 1984, Pub. L. No. 98-473, § 1008, 98 Stat. 1837, 2140.
[4] H. Rep. No. 99–797, at 14 (1986), U.S.Code Cong. & Admin.News 1986, pp. 6138, 6153.
[5] Antiterrorism and Effective Death Penalty Act of 1996, Pub L. No. 104-132 (April 24, 1996), 110 Stat 1214.
[6] These "federal officers" were: "any United States marshal or deputy United States marshal, special agent of the Division of Investigation of the Department of Justice, post-office inspector, Secret Service operative, any officer or enlisted man of the Coast Guard, any employee of any United States penal or correctional institution, any officer of the customs or of the internal revenue, [or] any immigrant inspector of any immigration patrol inspector." 48 Stat. 780.

lobbied for inclusion.[7]  In 1986, Congress understood that the scope of § 1114 was consistently expanding.  The Court therefore finds it extremely unlikely that Congress intended to limit § 115's scope to those officials covered by § 1114 at that precise moment.  Indeed, Congress would have understood that § 1114 could be expanded without legislative action—through regulations promulgated by the Attorney General.  *See Bankoff*, 613 F.3d at 370 n.11.  Accordingly, the Court concludes that Congress intended § 115 to mirror § 1114.  Ultimately, both statutes involve the same subject and serve the same purpose—protecting government actors in the performance of their official duties.  *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979) (explaining that when two statutes share a common purpose, subject, and source, courts can properly conclude that Congress intended them to be construed harmoniously).[8]

Finally, Anderson argues that, because the scope of § 115's protections is ambiguous, the rule of lenity requires it to be construed in her favor.  The Court disagrees.  The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in the favor of lenity."  *Rewis v. United States*, 401 U.S. 808, 812 (1971).  However, "[t]he rule plays no role in statutory interpretation unless the statute is truly ambiguous;" it does not apply simply because a statute is capable of a narrow construction.  *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991).  The rule is reserved "for those situations in which a reasonable doubt persists about a statute's

---

[7] *See, e.g.*, National Aeronautics and Space Act of 1958, Pub. L. No. 85-568, 72 Stat. 435 (adding "any officer or employee of the National Aeronautics and Space Administration"); Act of Aug. 27, 1964, Pub. L. No. 88-493, 78 Stat. 610 (adding "any security officer of the Department of State or the Foreign Service"); Veterans' Rehabilitation and Education Amendments of 1980, Pub. L. No. 96-466, 94 Stat. 2171 (adding "any officer or employee of the Veterans' Administration assigned to perform investigative or law enforcement functions").

[8] Anderson points out that certain federal statutes use more expansive terms to cross-reference § 1114. *See, e.g.*, 18 U.S.C. § 119(b)(2)(A) (criminalizing publication of private information of "an individual designated in section 1114"). The *Bankoff* and *Wynn* courts both found this point unavailing, and this Court agrees. As the Third Circuit explained, "that Congress used different language to incorporate § 1114 in different statutes . . . does not, standing alone, demonstrate that it used the term 'official' (as opposed to 'person') in § 115 with the intention of limiting its scope." *Bankoff*, 613 F.3d at 367; *see Wynn*, 827 F.3d at 785 (same).

intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103 (1990) (emphasis in original) (internal quotation omitted). After reviewing the structure, purpose, and legislative history of § 115 and § 1114, the Court has no such doubt about the application of the word "official" in this case. Accordingly, the rule of lenity does not apply.

Although it involves a novel legal question, the Court's decision is a narrow one. It holds that Officer Bacchus was an "official" protected by § 115(a)(1)(B) at the time of the altercation. The Court is guided by the undisputed fact that Anderson made the threat with the intent to interfere with the performance of Officer Bacchus's "official duties" and/or to retaliate against him based on the performance of those duties. *See* 18 U.S.C. § 115(a)(1)(B). On that day, Officer Bacchus's official duties allowed the SSA to operate safely and effectively. Accordingly, he served a fundamental federal interest—ensuring that vulnerable individuals have access to basic life necessities. To perform those duties, Officer Bacchus was authorized to carry a weapon and trained to identify risks and deescalate conflicts.[9] The Court finds that he was an "official" protected by § 115(a)(1)(B) during the performance of those duties.

//
//
//
//
//
//

---

[9] The staff of this Court are similarly protected by privately employed "Court Security Officers" under contract with the United States Marshals Service. *See* U.S. Marshals Service, *Court Security Officer Contracts*, https://www.usmarshals.gov/judicial/court_security_officer.htm (last accessed May 15, 2020).

**V. CONCLUSION**

For the foregoing reasons, Anderson's motion for judgment of acquittal is **DENIED**.

DATED: May 20, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE