AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
(E-Mail: Amy_Karlin@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defender
CUAUHTEMOC ORTEGA (Bar No. 257443)
Chief Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012
Telephone:  (213) 894-1462
Facsimile:  (213) 894-0081

Attorneys for Defendant
JACQUELINE ANDERSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>JACQUELINE ANDERSON,<br><br>       Defendant. | Case No. 19-CR-157-CJC<br><br>**DEFENDANT JACQUELINE ANDERSON'S SENTENCING MEMORANDUM; EXHIBITS** |

Defendant Jacqueline Anderson, by and through her attorney of record, Deputy Federal Public Defender Adam Olin, hereby submits this sentencing memorandum for the Court's consideration prior to sentencing.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 8, 2020          By  */s/ Adam Olin*

ADAM OLIN
Deputy Federal Public Defender
Attorneys for Jacqueline Anderson

# I.  INTRODUCTION

Jacqueline Anderson was convicted of uttering a threat toward a security guard at the Long Beach Social Security Administration as she walked away to her car in December 2018.  She did so after having been banned for the day, the culmination of approximately ten minutes of unpleasant, erratic behavior.  Following her threat, she walked to her car, entered it, and drove away.  She never returned to the building, realizing later that day she had found her Social Security Card – the sole reason for her visit to begin with.

Probation recommends a sentence of a one-year term of probation and a number of conditions including, most importantly, that Ms. Anderson continue receiving mental health treatment.  This is the just resolution.  Until the day of her visit to the Long Beach SSA, Ms. Anderson had never had any contact with the criminal justice system.  She instead spent decades working hard as a registered nurse, completing long tenures at a variety of the area's best medical centers.  But in the middle of 2018, Ms. Anderson began suffering from issues that were eventually identified by mental health professionals.  And now that Ms. Anderson has been routinely receiving treatment in connection with pretrial supervision, there have been no similar issues.  A federal conviction is, on its own, a significant punishment, carrying with it moral opprobrium that will forever mark her record.  This sentence – rather than custody during an ongoing health crisis – appropriately serves the purposes of the Sentencing Reform Act.

For these reasons, Ms. Anderson respectfully requests that the Court impose the sentence recommended by Probation: a one-year term of probation on the recommended conditions.

# II.  THE PRESENTENCE REPORT

The Probation Office calculates a total offense level of 14 and criminal history category I, for an advisory guideline range of 15-21 months.  PSR at 3.  But in light of the § 3553 factors, Probation recommends that Ms. Anderson be sentenced to a one-year term of Probation on certain terms.  Dkt. 69 at 1-3.  While agreeing with the

1

1    recommendation as to sentence,[1] Ms. Anderson objects to the application of § 3A1.2(a)'s

2    official victim enhancement where the victim in this matter is neither a "government

3    officer or employee."  With that correction, the total offense level is 8, resulting in an

4    advisory guideline range of 0-6 months.  And because this adjustment has "an extremely

5    disproportionate effect on" the sentencing range (*i.e.*, more than doubling the sentence),

6    the Court must find by clear and convincing evidence that it applies.  *See, e.g.*, *United*

7    *States v. Jordan*, 256 F.3d 922, 928-29 (9th Cir. 2001).

8         This challenge poses a thematically similar – but legally distinct – issue presented

9    by Ms. Anderson's prior motion.  While the Court concluded that the specific statutory

10   interplay of § 115 and § 1114 meant the former's use of the term "official" meant all the

11   individuals covered by the latter, there is no such issue here.  Section 3A1.2(a) provides

12   for a six-level increase[2] in the offense level where the victim was, relevantly, "a

13   government officer or employee."[3]  As Probation notes, these terms are not defined, and

14   there are no interrelated guideline provisions from which to draw a definition.  The plain

15   meanings of the terms "government officer" and "government employee" therefore

16   control.  *See, e.g.*, *United States v. Doe*, 778 F.3d 814, 823 (9th Cir. 2015).

17        The plain meanings of these terms demonstrate the victim does not qualify.  The

18   victim is not a "government employee;" he is the employee of a private company.  And

19   neither is he a "government officer."  Commonly used dictionaries are in agreement.  For

20   example, Black's Law Dictionary defines a "federal officer" "A sworn law-enforcement

21

22   _____

23        [1] The two limited exceptions relate to the extent of the fine.  First, Ms. Anderson
     objects to the requirement of an immediate payment of $600 toward the fine.  *See* Dkt.
     69 at 1.  That amount represents the majority of her liquid savings.  *See* PSR ¶ 79

24   (reflecting $800 in a checking account).  Second, Ms. Anderson proposes a fine of $2,000
     is appropriate in light of the correct offense level of 8, as it appears Probation has

25   recommended the minimum recommended fine corresponding to an offense level of 14.
     *See* § 5E1.2(c)(3).  A $200 minimum payment would be appropriate in light of that

26   reduced balance spread over the twelve months of probation.

27        [2] While the adjustment normally provides for a three-level increase, the guidelines
     dictate a six-level increase when Chapter 2A applies to the offense.  § 3A1.2(b).

28        [3] Neither of the two other definitions – involving the family of such a person, or a
     former government officer or employee – would apply here.

2

officer employed by a federal agency or entity" and "A person elected or appointed to an office in the federal government or any agency or entity."  Officer, *Black's Law Dictionary* (11th ed. 2019) (defining "federal officer").  The Oxford English Dictionary similarly defines "officer" as "A person who holds a public, civil, or ecclesiastical office or appointment; a servant or minister of the Crown; an appointed or elected functionary in the administration of local government, a public corporation, institution, etc., and in early use esp. in the administration of law or justice." *Oxford English Dictionary* (3d ed. 2004).[4]  The victim here neither was appointed to "an office in the federal government," nor holds a "public, civil, or ecclesiastical office or appointment."

Eschewing the plain meanings of the terms, Probation instead embraces a test focused on whether the victim performed acts similar to actual government employees.  *See* PSR ¶ 31 (asserting that the guideline was not "intended to distinguish between, or exclude from its coverage, government contract employees versus government employees – both of whom are performing the same government function").  Beyond this test untethered from the text, [5] Probation cites only a single case in support of the application of § 3A1.2 to a private employee.[6]  In *United States v. Gardner*, the Fifth Circuit, via an unpublished, per curiam decision, rejected a challenge on plain error review to the application of § 3A1.2.[7]  That case involved a defendant convicted under various criminal statutes following an escape from the hospital during which he assaulted a security guard on contract with the U.S. Marshals.  248 F. App'x 605 (5th Cir. 2005)

---

[4] The OED definition of "officer" must moreover be further cabined by § 3A1.2's use of the limiting modifier "government."

[5] Tellingly, Probation fails to even identify whether the victim qualifies as an officer or employee.  *See* PSR ¶ 32 ("[I]t appears that PSO J.B. was a government officer or employee based on the parameters set forth in § 3A1.2(a)(1)....").

[6] The only other decision – *United States v. Williams*, 9 F. App'x 679 (9th Cir. 2001) – addresses the separate issue of whether a substantive § 1114 count covers private security guards.

[7] Per Fifth Circuit rules, *Gardner* has no precedential effect.  5th Cir. R. 47.5.4; *see also* F.R.A.P. 32.1 (courts may restrict citation to cases decided before January 1, 2007).

3

1    (per curiam).  The defendant there asserted the victim was acting outside the scope of his

2    employment and therefore not protected by § 111.  The court rejected that argument –

3    concluding it was a jury question – and also summarily rejected the defendant's argument

4    relating to § 3A1.2 where he made no additional challenges beyond the frolic argument.

5    *Id.* at 608.  Neither the Fifth Circuit, nor the defendant himself, ever raised the argument

6    that the victim was not a "government officer or employee."  *See* Ex. A at 27 (reflecting

7    the single page comprising defendant's § 3A1.2 argument).  *Gardner* therefore provides

8    no guidance.

9          That the victim may be protected by § 115 but not qualify under § 3A1.2 is not

10   anomalous, and the Second Circuit's decision in *United States v. Crispo* is instructive.

11   That case involved a prosecution under 18 U.S.C. § 1503 for, relevantly, threats towards

12   officers of a federal court where the victim was a bankruptcy trustee.  306 F.3d 71 (2d

13   Cir. 2002).  After being convicted for issuing threats to the trustee of his estate, the

14   defendant challenged both his conviction and the application of the official victim

15   adjustment.  In construing the definition of "officer of the court," the Second Circuit

16   concluded that federal bankruptcy trustees were private persons, *i.e.*, not government

17   employees, but that they still qualified under the statute in light of Congress's explicit

18   definition of "officer" to include trustees.  *Id.* at 80-81.  But in the same case, the court

19   also concluded that the trustee – while protected by the charged statute – did not qualify

20   as an official victim within the meaning of § 3A1.2.  It did so because "the words

21   'government' and 'private' are opposite by definition."  *Id.* at 82 ("Unlike the term 'court

22   officer,' the term 'government officer' cannot be stretched to include private parties, at

23   least with respect to bankruptcy trustees.").

24         This case is no different.  While the Court determined that § 115 covers a private

25   security guard in light of interrelated statutes, that conclusion does not convert that same

26   private security guard into a "government officer."  The decision moreover implicitly

27   rejects Probation's "functionality test," which has no basis in the text of the guidelines.

28   The victim here is in the same position as that in *Crispo*: a private individual involved in

                                              4

1  federal functions.  The Court should follow the Second Circuit's logic in denying the
2  application of the official victim adjustment.[8]

### III.  THE APPROPRIATE SENTENCE

### A.    A Term of Probation Appropriately Reflects Ms. Anderson's Conduct

Ms. Anderson's conduct at the Long Beach SSA was unacceptable.  Per the testimony of the security guards, Ms. Anderson used inappropriate language, harangued the guards during her ten minutes outside the building, and issued a serious threat as she left toward her car.  No one, including the victim here, should have to face that sort of treatment when working.  That conduct merits a suitably serious punishment.  And as Probation has set forth, the appropriate punishment here is a term of probation on the terms recommended, and such terms the Court believes just.

There is no need to impose a term of imprisonment in order to either protect the Long Beach Social Security Administration specifically, or the public generally, from future offenses.  *See* 18 U.S.C. § 3553(a)(2)(C).  In the eighteen months since her visit to the Long Beach SSA, Ms. Anderson has neither returned there nor otherwise engaged in criminal conduct.  And should she return, Ms. Anderson risks time in custody as a violation of the terms of Probation.  *See* Dkt. 69 at 2 (recommending term of probation to require Ms. Anderson follow the SSA's debarment order).

The solemn pronouncement of a felony conviction, with all its attendant consequences, moreover is a just punishment here.  As set forth below, Ms. Anderson has never been in contact with the criminal justice system; she in fact had never been

_____

[8] Nor does the fact that an application note to a different guideline, § 2A2.2 (relating to aggravated assault), calls for the application of § 3A1.2 if a defendant was convicted under § 115 change the analysis.  For one, § 115 covers more than threats, *see* 18 U.S.C. § 115 (punishing murders, assaults, kidnappings), and for that reason Probation has applied § 2A6.1.  And second, even if the application note from a different guideline section applied here, it is contrary to the plain text of the applicable guideline and must be disregarded because it would put the plain meanings of a guideline in conflict with an application note.  *See United States v. Prien-Pinto*, 917 F.3d 1155, 1157 (9th Cir. 2019) ("Thus, we ascribe somewhat less legal weight to the Application Notes than to the Guidelines proper: if the Guidelines and the Application Note are inconsistent, the Guideline prevails.").

5

arrested.  PSR  ¶¶ 41-48.  A federal felony conviction represents an indelible mark on her life.  Now, each time she applies for a job, a routine background search will reflect that she was convicted of an offense indicating that she assaulted a federal officer.  The strictures of probation will moreover present a daily reminder of the consequences of this conviction.  She will be required to receive permission to visit her out-of-state fiancé, to be subject to supervision of a Probation Officer, and to continue involving federal supervision in her mental health treatment.

**B.     Treatment Represents a Superior Method of Addressing the Underlying Issues**

Ms. Anderson has never had issues with following the law.  As the PSR reflects, she had never been convicted of an offense, nor even arrested, prior to the events of this case.  PSR ¶¶ 41-48.  Indeed, throughout her more than five decades of life, Ms. Anderson has been a productive, hard-working member of society.  She obtained both an A.A. and a B.S. in nursing, the latter of which she received from Long Beach State.  *Id.* ¶¶ 71-72. As a registered nurse, Ms. Anderson has held multiple, long-term jobs with prestigious medical centers in the Los Angeles area, including Kaiser Permanente, USC Medical Center, and MLK Drew Medical Center.  *Id.* ¶¶ 74-77.  And the California Board of Registered Nursing reflects that Ms. Anderson has no record of disciplinary issues.  *Id.* ¶ 73.  Thus, for more than fifty years, Ms. Anderson led a hardworking, law-abiding life.

In light of that past, Ms. Anderson's conduct at the Long Beach SSA is both anomalous and difficult to understand.  But there appear to be some signs in the immediate lead-up to her visit.  After Ms. Anderson worked as a nurse for decades, her supervisor expressed concern about her mental health in 2018 and began "questioning her productivity, quality of work, appearance and hygiene."  Ex. B at 1; *see also id.* at 4 (noting the physician's observation of Ms. Anderson as 'poorly groomed and malodorous').  Her employers were sufficiently alarmed with her mental state that they placed her on leave and referred her to Kaiser's four-week Work Health Program, following which she was laid off.  As part of that program, Ms. Anderson was diagnosed

6

with adjustment disorder with anxiety and depression in May 2018.  Ex. B.  That these issues first arose in her late fifties, following an established and successful career, suggests the onset of a mental health issue which contributed to the offense conduct which occurred less than six months later. And, importantly, Ms. Anderson had no contact with the criminal justice system prior to her diagnosis.  The evidence accordingly suggests the development of a psychological issue impacting Ms. Anderson.  And since Ms. Anderson has begun more regularly receiving mental health treatment as part of pretrial supervision, there have been no issues similar to her visit to the Long Beach SSA.

Incarceration in light of both Ms. Anderson's history, health, and conduct does not serve the interests of the Sentencing Reform Act.  A term of probation will ensure Ms. Anderson is able to continue working and receive needed treatment.  *See* 18 U.S.C. 3553(a)(2)(D) (requiring courts to consider "the most effective manner" of delivering medical care).  Indeed, the past eighteen months on pretrial supervision have demonstrated that Ms. Anderson has both the capacity and the support system to ensure that her conduct will not emulate December 12, 2018, but will instead reflect the rest of her long, productive life.

## IV.  CONCLUSION

For the foregoing reasons, Ms. Anderson respectfully requests that the Court impose the sentence recommended by Probation: a one-year term of probation on such conditions as the Court finds appropriate.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

DATED:  June 8, 2020          By */s/ Adam Olin*
                              ADAM OLIN
                              Deputy Federal Public Defender
                              Attorneys for Jacqueline Anderson

7

# EXHIBIT A

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

## CASE NO. 06-10072

UNITED STATES OF AMERICA
Plaintiff - Appellee

v.

ROY GENE GARDNER
Defendant - Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION
Case No. 3:05-CR-179-ALL

## BRIEF OF APPELLANT: ROY GENE GARDNER

Lydia M.V. Brandt, Esq.
THE BRANDT LAW FIRM, P.C.
Texas Bar No. 00795262
P.O. Box 850843
Richardson, Texas  75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case. These representations are made in order

that the Judges of this Court may evaluate possible disqualifications or recusal.


**ROY GENE GARDNER** (Appellant/Defendant)
    Ms. Lydia M.V. Brandt,
    Brandt Law Firm, P.C.
    Richardson, TX (on direct appeal)

    Mr. Weston Loegering (Trial counsel)
    Mr. Christopher Kratovil (Trial counsel)
    Ms. Kara Altenbaumer-Price (Trial counsel)
    Hughes & Luce
    1717 Main Street, Suite 2800
    Dallas, TX 75201


**UNITED STATES OF AMERICA**
    Mr. Christopher Stokes, Assistant U.S. Attorney
    Mr. Paul Yanowitch, Assistant U.S. Attorney
    Department of Justice, U.S. Attorney's Office, Dallas, TX


**JUDGE JORGE A. SOLIS**


                   /S/ Lydia M.V. Brandt

                   Lydia M.V. Brandt, Esq.

# STATEMENT REGARDING ORAL ARGUMENT

In order to allow all parties the opportunity to respond to issues which may arise, Appellant respectfully suggests that oral argument will materially assist the Court in understanding the factual evidence before it, and in applying the law. Accordingly, oral argument is requested because the issues presented are of importance to the jurisprudence of the Fifth Circuit and of the State of Texas.

## TABLE OF ABBREVIATIONS

The following are a list of abbreviations used within the brief:

| | |
|---|---|
| Appellant or Gardner | The appellant, **ROY GENE GARDNER**, the defendant below |
| Appellee | The Appellee, The United States of America |
| PSR | Pre-Sentencing Investigation Report ("PSR") |
| (CR Vol:page) | Clerk's Record, which consists of the single pleadings volume, no. 1, followed by the page(s) on which the cited material can be found |
| (RR Vol:page) | Reporter's Record followed by the volume number, followed by the page(s) on which the cited material can be found; for example, (RR I:34) is Volume I of the Reporter's Record of the trial, page 34. |
| MNT Hg. | The reporter's record of the hearing on the Motion for New Trial was not numbered and is referred as MNT Hg. followed by the page number. |
| S. Hg. | The reporter's record of the sentencing hearing was not number, and is referred to as S. Hg. followed by the page number. |

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF ABBREVIATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    I.  Proceedings Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    II.  Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    I.      Whether the arrest of Gardner on March 9, 2005 was an arrest under 18
          U.S.C. § 3161, violating his right to a speedy trial under the Speedy
          Trial Act and the Sixth Amendment to the U.S. Constitution . . . . . . 8
        A.  Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        C.  The convictions and sentences must be vacated with prejudice to
            bar re-prosecution for the Escape Charges . . . . . . . . . . . . . 10
            1.  An indictment must be filed 30 days from the date on
                which the individual was arrested or the charge must be
                dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            2.  The March 10, 2005 escape-arrest of Mr. Gardner was an
                arrest that triggered his right to a speedy trial for the
                Escape Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

v

II.    Whether the Smith guards' repeated and intentional unauthorized acts
       placed them outside the definition of a federal officer engaged in the
       performance of his official duties under 18 U.S.C. § 111 . . . . . . . . 17
       A.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       B.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
       C.    The Smith guards acted outside their official duties and lost the
             protection of 18 U.S.C. § 111 . . . . . . . . . . . . . . . . . . . . . . . . 19
             1.    The test is whether the federal officer is acting within the
                   scope of his employment . . . . . . . . . . . . . . . . . . . . . . . 19
             2.    Because of their intentional, unauthorized acts, the Smith
                   guards had ceased to act within the course of their
                   employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
III.   Whether the trial court erred in overruling the objections to the
       enhancements based on the Smith guards as law enforcement because
       they acted outside the scope of their employment . . . . . . . . . . . . . 26
       A.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
       B.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
       C.    Because Mr. Cannon and Mr. Garcia were not acting within the
             scope of their employment, it was error to enhance the offense
             level under USSG § 3A1.2 and § 3A1.3 . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## CASE LAW

*Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006) . . . . . . . . . . . . . . . . . 20, 21, 25

*Counts v. Guevara*, 328 F.3d 212 (5th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dillingham v. United States*, 423 U.S. 64 (1975) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Galveston, H & S.A. Ry. Co. v. Currie*, 100 Tex. 136, 96 S.W. 1073 (1906) . . . . 20

*Tex. & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236 (1952) . . . . . . . . 20

*United States v. Adams*, 363 F.3d 363 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. De La Pena-Juarez*, 214 F.3d 594 (5th Cir. 2000) . . . . . . . . . . . 10

*United States v. Duhon*, 440 F.3d 711 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Frye*, 372 F.3d 729 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Fuchs*, 467 F.3d 889 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Heliczer*, 373 F.2d 241 (2nd Cir. 1967) . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lopez*, 710 F.2d 1071 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. McDonald*, 435 U.S. 850 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Stead*, 745 F.2d 1170 (8th Cir. 1984) . . . . . . . . . . . . . . . . . 12-14

*United States v. Williams*, 352 F.2d 477 (5th Cir. 1965) . . . . . . . . . . . . . . . . 25, 27

*Williams v. United States*, 71 F.3d 502 (5th Cir.1995) . . . . . . . . . . . . . . . . . . . . . 20

## CONSTITUTIONAL LAW

U.S.CONST. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTORY LAW

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF JURISDICTION

The jurisdiction of this court may be invoked pursuant to 28 U.S.C. § 1291 as

an appeal from a final judgment entered by the United States District Court for the

Northern District of Texas.  Furthermore, jurisdiction to review the sentence imposed

in this case may be invoked pursuant to 18 U.S.C. § 3742(a) as an appeal of a

sentence imposed under the Sentencing Reform Act of 1984.

## STATEMENT OF THE ISSUES

I.      Whether the arrest of Gardner on March 9, 2005 was an arrest under 18 U.S.C. § 3161, violating his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment to the U.S. Constitution

II.     Whether the Smith guards' repeated and intentional unauthorized acts placed them outside the definition of a federal officer engaged in the performance of his official duties under 18 U.S.C. § 111

III.    Whether the trial court erred in overruling the objections to the enhancements based on the Smith guards as law enforcement because they acted outside the scope of their employment

# STATEMENT OF THE CASE

## I. Proceedings Below.

On October 19, 2005, a nine (9) count superceding indictment was filed against

Mr. Gardner:

| | |
|---|---|
| Count 1 | Escape from Custody in violation of 18 U.S.C. § 751(a); |
| Count 2 | Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); |
| Count 3 | Assault, Resisting, or Impeding an Officer or Employee of the United States in violation of 18 U.S.C. §§ 111(a)(1), (b); |
| Count 4 | Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); |
| Count 5 | Assault, Resisting or Impeding an Officer or Employee of the United States in violation of 18 U.S.C. §§ 111(a)(1), (b); |
| Count 6 | Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); |
| Count 7 | Carjacking in violation of 18 U.S.C. § 2119; |
| Count 8 | Using and Carrying a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); and |
| Count 9 | Felon in Possession of Firearm in violation of 18 U.S.C. §§ 922(g), 924(e). (CR 1:39-48). |

On December 20, 2005, following a jury trial, Mr. Gardner was found guilty

on counts 1, 3, 4, 7, 8 and 9, with special findings that the government proved beyond

a reasonable doubt that the defendant brandished the firearm in furtherance of the

commission of the crime charged in Count 3. (CR 1:206).  On all other counts 2, 5,

and 6, Mr. Gardner was found not guilty.  He was sentenced to:

- 60 months on Count 1; 240 months on Count 3; 180 months on Count 7; 360 months on Count 9 to run concurrently with each other for a total term of 360 months on Counts 1, 3, 7 and 9; 84 months on Count 4; 300 months on Count 8 to run consecutively to each other, consecutively to Counts 1, 3, 7, and 9, and concurrently to the undischarged term of imprisonment in Case No. 3:90-CR-017-G for a total term of 744 months.
- supervised release for a term of 3 years on all counts to run concurrently with each other for a total term of three years;
- special assessment of $600
- restitution of $500

(CR 1:349-355).

On January 9, 2006, Mr. Gardner timely filed a notice of appeal. (CR 1:315-316).

On May 15, 2006, Mr. Gardner filed a Motion for New Trial and Request for Hearing Concerning Alleged Juror Misconduct During Trial. (CR 1:327). The motion was denied. (CR 1:342).

## II.  Statement of the Facts.

"Mr. Gardner was arrested by federal marshals on March 10, 2005 after allegedly escaping from federal custody on March 9, 2005.  At the time of his arrest, Mr. Gardner was in federal custody pursuant to a warrant for violation of the conditions of supervised release from an earlier conviction.  Upon arrest, [he] was returned immediately to custody and continues to remain in federal custody.  The underlying supervised release was revoked on March 15, 2005."

Thereafter, "Mr. Gardner was indicted on July 7, 2005 on charges stemming from his alleged escape and was arrested a second time on July 18, 2005 (despite already being in federal custody at the time for violation of supervised release)...." (CR 1:191-192).

## SUMMARY OF ARGUMENT

I.      The arrest of Gardner on March 9, 2005 was an arrest under 18 U.S.C. § 3161,

violating his right to a speedy trial under the Speedy Trial Act and the Sixth

Amendment to the U.S. Constitution. An indictment must be filed 30 days from the

date on which the individual was arrested or the charge must be dismissed. In the

case at bar, the March 10, 2005 escape-arrest of Mr. Gardner was an arrest that

triggered his right to a speedy trial for the Escape Charges. Because the prosecution

failed to comply with the speedy trial rules, the convictions and sentences must be

vacated with prejudice to bar re-prosecution for the Escape Charges.


II.     The Smith guards' repeated and intentional unauthorized acts placed them

outside the definition of a federal officer engaged in the performance of his official

duties under 18 U.S.C. § 111. The test is whether the federal officer is acting within

the scope of his employment. Because of their intentional, unauthorized acts, the

Smith guards had ceased to act within the course of their employment. As a result,

because the Smith guards acted outside their official duties, they lost the protection

of 28 U.S.C. § 111.

III.    The trial court erred in overruling the objections to the enhancements based on

the Smith guards as law enforcement because they acted outside the scope of their

employment.  Because Mr. Cannon and Mr. Garcia were not acting within the scope

of their employment, it was error to enhance the offense level under USSG § 3A1.2

and § 3A1.3.

7

# ARGUMENT

I.   **WHETHER THE ARREST OF GARDNER ON MARCH 9, 2005 WAS AN ARREST UNDER 18 U.S.C. § 3161, VIOLATING HIS RIGHT TO A SPEEDY TRIAL UNDER THE SPEEDY TRIAL ACT AND THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.**

### A.   STATEMENT OF FACTS.

"Mr. Gardner was arrested by federal marshals on March 10, 2005 after allegedly escaping from federal custody on March 9, 2005. At the time of his arrest, Mr. Gardner was in federal custody pursuant to a warrant for violation of the conditions of supervised release from an earlier conviction. Upon arrest, [he] was returned immediately to custody and continues to remain in federal custody. The underlying supervised release was revoked on March 15, 2005."

"Mr. Gardner was indicted on July 7, 2005 on charges stemming from his alleged escape and was arrested a second time on July 18, 2005 (despite already being in federal custody at the time for violation of supervised release). He was arraigned on July 27, 2005. A superceding indictment was brought on October 19, 2005 – three months after the initial indictment. Because the indictment was brought almost four months after his arrest and the superceding indictment another three months later, the indictments were untimely and must be dismissed."

8

(CR 1:191-192).

The court held a pre-trial hearing on various motions filed by the defense, including the Motion to Dismiss for Failure to Timely Indict, and its subsequent amendment, the government's response, and the defense reply. (CR 1:133; 191; 203; 255).

At the conclusion of the hearing the district court ruled:

> With respect to the untimeliness, I think there is a difference here, and that is the escape, as well as the fact that there was no complaint filed. 3162 of course references the charge in the complaint, that that is what has to be dismissed. There was no complaint. There seems to be a little bit of incongruity between 3161(b) and then the language of 3162, what appears to be the enforcement section of the statute, the Speedy Trial Act.

> But I think under the circumstances of this case the Government is correct that when Mr. Gardner was indicted on July the 7th, that is what began the clock running.

> So I will deny that motion to dismiss for failure to time indict.

(RR 1:10-11).


**B.     STANDARD OF REVIEW.**

A criminal defendant can appeal the denial of a motion to dismiss on speedy trial clause grounds after the trial has been completed. *United States v. McDonald*, 435 U.S. 850 (1978).

The Fifth Circuit set out the standard of review in *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000):

> "We review the district court's factual findings regarding a Speedy Trial Act motion for clear error and its legal conclusions *de novo*."

## C. THE CONVICTIONS AND SENTENCES MUST BE VACATED WITH PREJUDICE TO BAR RE-PROSECUTION FOR THE ESCAPE CHARGES

The trial court's denial of the amended motion to dismiss the indictment as untimely filed appears to be predicated solely on a conclusion of law — that no complaint had been filed against Mr. Gardner, and therefore, the enforcement provision of 18 U.S.C. § 3162(a)(1) was not applicable. The record reflects a dearth of findings of fact, or any other conclusion of law, within the reporter's record of the hearing or in the clerk's record. Accordingly, the trial court did not address the *Barker* four-factors balancing test, or make fact findings in support of the denial of the motion to dismiss the indictment as untimely. *See United States v. Frye*, 372 F.3d 729, 735 (5th Cir. 2004)[1]. Likewise, while the court addressed the applicability

---

[1] The *Frye* court wrote:

Findings of fact made for Sixth Amendment speedy trial analysis are, of course, reviewed only for clear error. *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir.2003).... Under that well-known standard, "we defer to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed". *Payne v. United States*, 289 F.3d 377, 381 (5th Cir.2002).

The parties dispute our standard of review, however, for the four-factors balancing.

10

of the statute, it did not address the Sixth Amendment violation also alleged in Mr.

Gardner's amended motion. *See* CR 1:192.

### 1.    An indictment must be filed 30 days from the date on which the individual was arrested or the charge must be dismissed

The Sixth Amendment to the United States Constitution provides that "in all

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

U.S.CONST. amend. VI.

---

The Government maintains we review *de novo;* but, it acknowledges our precedent can be read otherwise. *E.g., Davis v. Puckett,* 857 F.2d 1035, 1040-41 (5th Cir.1988) ("In *evaluating the factors,* the district court *was not clearly erroneous in deciding* that Davis's constitutional right to a speedy trial had not been violated." (emphasis added)); ("Having run the *Barker* balancing test, we conclude that the district court *did not clearly err in determining that Davis failed to show that his Sixth Amendment rights were violated.*" (emphasis added)); *United States v. Bergfeld,* 280 F.3d 486, 492 n. * (5th Cir.2002) (Garwood, J., dissenting in part) ("We review the district court's *application* of the relevant [speedy trial] factors for *clear error.*" (emphasis added); citing *United States v. Lucien,* 61 F.3d 366, 371 (5th Cir.1995)). The Government asserts that these statements are best read as referring only to the fact finding used for the ultimate balancing decision; Frye, that we utilize the more deferential clearly erroneous standard for that decision.

... we note that, generally, a district court's balancing of factors, resulting in a decision, are akin to, if not, conclusions of law, or at least rulings on mixed questions of fact and law, reviewed *de novo. E.g., United States v. Soape,* 169 F.3d 257, 267 (5th Cir.) (claim that denial of subpoena requests violated Sixth Amendment right to compulsory process reviewed *de novo*).... Accordingly, it is arguable that plenary review should be given a Sixth Amendment speedy trial decision. On the other hand, because that decision is so fact specific, the clear error standard may well fit the bill. We need not now resolve this question. Even assuming we review only for clear error, we reach the same result: Frye's Sixth Amendment speedy trial right was not violated.

11

Congress enacted the Speedy Trial Act to give meaning to the Sixth Amendment right to a speedy trial. " *United States v. Stead,* 745 F.2d 1170, 1171 (8th Cir. 1984). Specifically, 18 U.S.C. § 3161(b) provides in pertinent part:

> (b)     *Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested* or served with a summons in connection with such charges....

(Emphasis supplied).

The Speedy Trial Act, 18 U.S.C. § 3162, imposes sanctions for failure to comply with the speedy trial provisions:

> (a)(1)  *If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.* In determining whether to dismiss the case with or without prejudice, the court shall consider among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice.

(Emphasis supplied).

The trial court erred when it denied the amended motion to dismiss concluding, as a matter of law, that because the government had not filed a complaint as recited in 18 U.S.C. § 3162(a)(1), Mr. Gardner's speedy trial rights had not been violated.

(RR 1:10-11). However a complaint is not necessary to preserve a defendant's constitutional and statutory right to a speedy trial.

"[A]n arrest is sufficient in itself to trigger the speedy trial right." *United States v. Stead*, 745 F.2d 1170, 1172 (8th Cir. 1984).[2] This is because "[t]o legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime." *Dillingham v. United States*, 423 U.S. 64, 65 (1975). Accordingly, "the Government constituted [Mr. Gardner] an 'accused' when it arrested him [for the Escape Charges[3]] and thereby commenced its prosecution of him." *Dillingham v. United States*, 423 U.S. 64, 65 (1975).

---

[2]    *See also Dillingham v. United States*, 423 U.S. 64, 65 (1975) ("it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment"); *United States v. Marion*, 404 U.S. 307, 321 (1971) ("... we decline to extend that reach of the [Sixth] amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer").

[3]    *See* Judgment In a Criminal Case, No. 3:05-CR-179-P(01): Ct 1 – Escape From Custody in violation of 18 U.S.C. § 751(a); Ct 2 – Assault, Resisting or Impeding an Officer or Employee of the United States in violation of 18 U.S.C. § 111(a)(1) & (b); Ct 4 – Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); Ct 7 – Carjacking in violation of 18 U.S.C. § 2119; Ct 8 – Using and Carrying a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); and Ct 9 – Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) & 924(c). The other counts were either dismissed or the jury returned a verdict of not guilty. (CR 1:349-350) (hereinafter all counts are referred to as the "Escape Charges").

2.   **The March 10, 2005 escape-arrest of Mr. Gardner was an arrest that triggered his right to a speedy trial for the Escape Charges**

The record amply demonstrates that Mr. Gardner's escape-arrest was the beginning of continuing restraints on his liberty that were imposed in connection with the formal Escape Charges. *See United States v. Stead*, 745 F.2d 1170, 1172 (8th Cir. 1984), *citing Dillingham v. United States*, 423 U.S. 64 (1975), *rev'g United States v. Palmer*, 502 F.2d 1233 (5th Cir. 1974) ("[T]he speedy trial right is triggered by ... arrests that were the beginning of continuing restraints on [the] defendant's liberty imposed in connection with the formal charge on which [the] defendant was eventually tried").

The trial exhibits reflect that Mr. Gardner's arrest on March 10, 2005 was the direct result of his escape. The U.S. Marshals Service Prisoner Tracking System recites that Mr. Gardner "*escaped* [from] Mesq[uite] Comm[unity] Hosp[ital] on March 9, 2005, *and was "arr'd [arrested in] Toole, TX* 10:45 am." (Emphasis supplied) (GX-17). *See also* Testimony of David Travis, Supervisory Deputy U.S. Marshal, U.S. Marshal's Dallas Division (discussing GX-17, and the arrest in Toole, TX for the escape from Mesquite Community Hospital on March 10, 2005). (RR 1:114-115).

14

Deputy Sheriff Eric Murray, a member of the U.S. Marshal's Task Force Fugitive Apprehension Strike Team, likewise testified that the "final takedown arrest" of Mr. Gardner on March 10, 2005 was the result of Mr. Gardner's escape from the Mesquite Community Hospital on March 9, 2005. (RR 1:288-291; 294; 298).

The arrest for the escape was separate and apart from the prior arrest of Mr. Gardner for a violation of the terms and conditions of his probation. This fact is documented by a Warrant for Arrest of Probationer/Supervised Releasee obtained by U.S. Probation. GX-2. U.S. Marshals arrested Mr. Gardner on February 15, 2005. (GX-3) *See also* (Testimony of Lisa Lambert, Senior U.S. Probation Officer: Gardner had begun his term of supervised release in September, 2004. In January, 2005, U.S. Probation officer Lambert requested an arrest warrant to revoke his supervised release for the original judgment for unlawful possession of a firearm). (RR 1:93-94, 98-99).

And, unlike *Stead*, the restrictions on the liberty of Mr. Gardner were not based on his original conviction in Case No. 3:90-CR-017-G, but rather on the Escape Charges. In fact, the escape played a major role in the enhancement of Mr. Gardner's sentence for the revocation of supervised release. The sentencing guidelines for the revocation of supervised release yielded a term of imprisonment of 8 to 14 months.

Yet, Chief Judge Fish enhanced the sentence to five years based on Mr. Gardner's escape. (RR 1:12).

Furthermore, the 744-months term of imprisonment for the Escape Charges ran "concurrently to the undischarged term of imprisonment in Case No. 3:90-CR-017-G;" thus, making the escape arrest the beginning of the restraints on Mr. Gardner's liberty imposed in connection with the Escape Charges. (CR 1:351; GX-1).

Accordingly, Mr. Gardner has demonstrated that he was arrested for the Escape Charges under the Speedy Trial Act and the Sixth Amendment on March 10, 2005. Accordingly, the speedy trial time clock did not fall within the time period set out in 18 U.S.C. § 3161(b) and the convictions and sentences of Mr. Gardner must be vacated with prejudice to bar re-prosecution for the Escape Charges.

II.     **WHETHER THE SMITH GUARDS ' REPEATED AND INTENTIONAL UNAUTHORIZED ACTS PLACED THEM OUTSIDE THE DEFINITION OF A FEDERAL OFFICER ENGAGED IN THE PERFORMANCE OF HIS OFFICIAL DUTIES UNDER 18 U.S.C. § 111.**

     A.     **STATEMENT OF FACTS.**

David Travis, the supervisory deputy U.S. Marshal with the U.S. Marshal Service, Dallas Division testified that the U.S. Marshal Service contracted with Smith Protective Services (*see* Defense Exhibit 5; the "Contract") to supply two guards to provide round-the-clock security protection of Mr. Gardner because the U.S. Marshal Service did not have the resources and manpower to provide 24 hour security protection. (I:112; Gov't Exhibit 17). The two Smith guards, on duty at the time of the escape of Mr. Gardner, were Mr. Cannon and Mr. Garcia. (I:147, 235). They worked twelve (12) hour shifts, rotating places every hour, so that one of them was in the bedroom with Mr. Gardner, while the other was stationed out in the hall.(I:148).          The guards repeatedly and intentionally violated the Contract and Smith polices. They failed to restrain Mr. Gardner and maintain "constant observation and the ability to respond to any eventuality at all times." (I:128; Defense Exhibit 5, Block 20, para. 4). They provided him with commodities, including access to a telephone to make and receive calls, a cigarette lighter, snacks, and a yellow legal

pad and a telephone book. (I:127, 256-258; Defense Exhibit 5, Block 20, para. 4 iii;

Defense Exhibit 13R; Defense Exhibit 13T).

The unauthorized acts of the Smith guards were so egregious that after the

March 9, 2005 escape of Mr. Gardner, the upper levels of management in the U.S.

Marshal Service terminated the Contract with Smith to provide security services to

federal prisoners in Dallas, Texas. (I:135). In answer to the question as to why the

Contract with Smith was terminated, U.S. Marshal Travis testified:

> After the incident of March 9[th] several things were pointed out to us that
> had happened due to the investigation that we did with Smith Security
> and their contract and things that were alleged to have happened while
> Mr. Gardner was in the hospital, and it caused us to look at other
> vendors.

(I:135).


## B.    STANDARD OF REVIEW.

In *United States v. Fuchs,* 467 F.3d 889, 904 (5th Cir. 2006), the Fifth Circuit

held:

> We review de novo the district court's denial of a properly preserved
> motion for judgment of acquittal. *United States v. Anderson,* 174 F.3d
> 515, 522 (5th Cir.1999) (citing *United States v. Payne,* 99 F.3d 1273,
> 1278 (5th Cir.1996)). "In determining whether there was sufficient
> evidence to sustain [the] convictions, we must decide, viewing the
> evidence and the inferences therefrom in the light most favorable to the
> verdict, whether a rational juror could have found [the defendant] guilty
> beyond a reasonable doubt." *Id.* (citing *United States v. Burton,* 126

18

F.3d 666, 669 (5th Cir.1997); *Payne*, 99 F.3d at 1278). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id.* (quoting *Burton*, 126 F.3d at 669-70). "Moreover, our standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct." *Id.* (citing *Burton*, 126 F.3d at 670; *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir.1993); *United States v. Bell*, 678 F.2d 547, 549 n. 3 (Former 5th Cir.1982)).

## C. THE SMITH GUARDS ACTED OUTSIDE THEIR OFFICIAL DUTIES AND LOST THE PROTECTION OF 18 U.S.C. § 111

### 1. The test is whether the federal officer is acting within the scope of his employment

The objective of 18 U.S.C. § 111 is to afford a federal officer, "engaged in performing his duties, the protection of the federal court when a common law offense is committed against him." *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974). "With reference to whether an assault occurs upon a federal officer 'while engaged in ... the performance of his official duties,' 18 U.S.C. § 111:

> The test of a Government agent's conduct is whether he is acting 'within the scope of what [he] is employed to do," as distinguished from "engaging in a personal frolic of his own.' *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967),.... "

19

*United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983). *See also United States v. Heliczer*, 373 F.2d 241, 245 (2nd Cir. 1967) ("The test is whether the agent is acting within that compass or is engaging in a personal frolic of his").

The courts look to Texas law in making the determination. "Under Texas law, 'an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Counts v. Guevara,* 328 F.3d 212, 214 (5th Cir.2003) (quoting *Williams v. United States,* 71 F.3d 502, 506 (5th Cir.1995)).... However, 'when the servant turns aside, *for however short a time*, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.' *Tex. & P. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 241 (1952) (quoting *Galveston, H & S.A. Ry. Co. v. Currie,* 100 Tex. 136, 96 S.W. 1073, 1074 (1906))." *Bodin v. Vagshenian,* 462 F.3d 481, 485 (5th Cir. 2006).

> **2.    Because of their intentional, unauthorized acts, the Smith guards had ceased to act within the course of their employment**

At the close of the evidence, the defense made a Rule 29 Motion for Judgment of Acquittal arguing among other things that:

> To be protected under the statute, they must be persons assisting a federal officer in the performance of official duties. ***The Smith officers*** were so incompetent and ***engaged in so many unauthorized activities, failed to abide by the terms of the contact*** and so grossly negligent that they fall outside the definition of a person assisting a federal officer in the performance of their official duties. ***They were so bad they lost their federal status.***

(II:358).

The defense argued that had one of the guards pulled a gun and shot Mr. Gardner without provocation, the government would contend that they were not acting in their official capacity. (II:359). The trial judge erred in denying the motion. As reflected below, the Smith guards did not act in furtherance of the employer's business for the accomplishment for which they were employed. *Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006). Their intentional and repeated failure to abide by the terms of the Contract between the U.S. Marshall Service and Smith, took them outside of the protection of the federal statute. (II:359). Moreover, the U.S. Marshal Service too failed to abide by its own policies to ensure contractual compliance.

Consider the terms of the Contract and the policies of the U.S. Marshal Service and Smith.

(a)    The Contract and policy required:

Smith personnel be trained on prisoner restraints (I:126; Defense Exhibit
5, Block 20, para. 4 vii).

Yet, U.S. Marshall Travis testified that there was no evidence that the guards, Cannon

and Garcia, had undergone any such training.  (I:119).


(b)    The Contract and policy required:

U.S. Marshal representatives to visit periodically to ensure that the
private contractor complied with the terms of the contract.

U.S. Marshal Travis testified that other than his visit which was made in response to

a complaint by Mr. Gardner, no other representative from the U.S. Marshal Service

had made a compliance inspection.  (I:119).

( c)    The Contract and policy required:

a prisoner not have visitors, nor can the inmate make or receive
telephone calls. (I:116, 127; Defense Exhibit 5, Block 20, para. 4 i).

Despite the policy, someone from Mr. Gardner's family had shown up to visit him in

the hospital.  (I:124).  Mr. Garcia, one of the guards, admitted that he allowed Mr.

Gardner to make telephone calls, although to do so violated Smith procedures.

(I:243, 252).

(d)    The Contract and policy required:

the inmate not be permitted to receive commodities.

Yet the photographs of the crime scene taken by the government reflect a cigarette

lighter, snacks, and a yellow legal pad and the telephone book in the possession of

Mr. Gardner.  (I:127, 256-258; Defense Exhibit 5, Block 20, para. 4 iii; Defense

Exhibit 13R; Defense Exhibit 13T;).

> (e)    The Contract and policy required:
>
> "[r]estraining equipment will be placed on all Federal Prisoners and
> remain on same at all time while in custody," except for medical
> examinations, use of bathroom facilities and when a prisoner is bathing.
> "One arm and/or one leg cuffed to a hospital bed or other such apparatus
> will be sufficient restraints." (I:128; Defense Exhibit 5, Block 20, para.
> 4 iv).

Despite the Contract, Mr. Cannon testified that he allowed Mr. Gardner to "sit [on the

bed] and dangle his legs off to help circulation, or he might walk around just a little

bit to the window just a few minutes and then we would shackle him back to the bed,"

(I:161). Mr. Garcia testified that he too would unshackle Mr. Gardner and let him sit

in the bed, and by the window, notwithstanding that this violated Smith procedures.

(I:253).

> (f)    The Contract and policy required:
>
> "guards will position themselves in the room and/or at a place in the
> close proximity to the prisoner maintaining constant observation and the

23

ability to respond to any eventuality at all times." (I:128; Defense
Exhibit 5, Block 20, para. 4 vi).

Mr. Cannon was unable to identify Mr. Gardner despite having guarded him for 96

hours. The chair in which Mr. Cannon had sat, faced the television that was over the

bathroom, so Mr. Gardner's head was to the right of Mr. Cannon.  Mr. Cannon

admitted: "I very seldom looked [Gardner] in the face."  (I:191, 192; 193; Gov't

Exhibit 7).  Likewise, Mr. Garcia testified that he could not observe Mr. Gardner

when he was guarding him because Mr. Garcia was sitting in the chair watching TV

and not facing Mr. Gardner.  (I:260).

U.S. Marshal Travis testified that it was against U.S. Marshall policy for guards

to sleep on the job, and that it was a serious offense. (I:130, 131).  Yet, Mr. Garcia

had made statements that although he did not see Mr. Cannon sleeping on the job in

the Gardner case, there were other instances in which "[s]ome of the other guards

slept on duty, Cannon and Ginn" and "I did not like working with Cannon because

of his falling asleep." (I:248, 250).  Mr. Garcia admitted that the behavior of Mr.

Cannon "might have" played a part in the escape. (I:251).

After the March 9, 2005 escape of Mr. Gardner, the upper levels of

management in the U.S. Marshal Services terminated the Contract with Smith to

provide security services to federal prisoners in Dallas, Texas. (I:135).  In answer to

24

the question as to why the Contract with Smith was terminated, U.S. Marshal Travis

testified:

> After the incident of March 9th several things were pointed out to us that
> had happened due to the investigation that we did with Smith Security
> and their contract and things that were alleged to have happened while
> Mr. Gardner was in the hospital, and it caused us to look at other
> vendors.

(I:135).

Because Mr. Cannon and Mr. Garcia set "aside, *for however short a time*, from

the prosecution of the master's work to engage in an affair wholly [their] own, [they]

cease[d] to act for the master, and the responsibility for that which [they] d[id] ...

[was] upon [them] alone." *Bodin v. Vagshenian*, 462 F.3d 481, 485 (5th Cir. 2006).

Accordingly, the trial judge erred in denying the Rule 29 motion because – as

defense counsel argued  – "the Smith officers ... *engaged in so many unauthorized*

*activities, [and] failed to abide by the terms of the contact*," such that their acts and

omissions resulted in "a willful or wanton, rather than a merely negligent, deviation

from the authorized course of employment," thereby taking them out of the protection

of the statute.  (II: 358). *United States v. Williams*, 352 F.2d 477, 480 (5th Cir. 1965).

Accordingly, Mr. Gardner requests that this court acquit with respect to all

counts that pertain to 18 U.S.C. § 111 because the Smith guards were not entitled to

the protection of the federal statute.

**III.   WHETHER THE TRIAL COURT ERRED IN OVERRULING THE OBJECTIONS TO THE ENHANCEMENTS BASED ON THE SMITH GUARDS AS LAW ENFORCEMENT BECAUSE THEY ACTED OUTSIDE THE SCOPE OF THEIR EMPLOYMENT**

**A.   STATEMENT OF FACTS.**

The Statement of Facts and arguments in Issue II are incorporated by reference

herein.

**B.   STANDARD OF REVIEW.**

In *United States v. Duhon*, 440 F.3d 711, 714 (5ᵗʰ Cir. 2006), the Fifth Circuit

held:

> The district court's interpretation of the Guidelines, even after *Booker,* is reviewed *de novo. See United States v. Smith*440 F.3d 704 at n. 2 (5th Cir.2006). We accept the district court's findings of fact unless clearly erroneous. *United States v. Creech,* 408 F.3d 264, 270 n. 2 (5th Cir.2005). The ultimate sentence is reviewed for "unreasonableness" with regard to the statutory sentencing factors enumerated in section 3553(a). *Booker,* 125 S.Ct. at 765.[FN3]
>
> FN3. The relevant factors include:
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed–
>    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B)  to afford adequate deterrence to criminal conduct;
>    (C)  to protect the public from further crimes of the defendant;  and
>    (D)   to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner;
> (3)  the kinds of sentences available;
> (4)  the kinds of sentence and the sentencing range established for–
>    (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
> (5)  any pertinent policy statement ...;
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct .... *citing* 18 U.S.C. § 3553(a).

**C.** **BECAUSE MR. CANNON AND MR. GARCIA WERE NOT ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT, IT WAS ERROR TO ENHANCE THE OFFENSE LEVEL UNDER USSG § 3A1.2 AND § 3A1.3.**

Mr. Gardner relies on the facts and arguments in Issue II for the proposition that "the Smith officers ... *engaged in so many unauthorized activities, [and] failed to abide by the terms of the contact*," such that their acts and omissions resulted in "a willful or wanton, rather than a merely negligent, deviation from the authorized course of employment," thereby taking them out of the protection of the statute. (II: 358). *United States v. Williams*, 352 F.2d 477, 480 (5th Cir. 1965).

Because Mr. Cannon and Mr. Garcia were not acting within the scope of their employment, it was error to enhance the offense level under USSG § 3A1.2 and USSG § 3A1.3, using as its basis that "Cannon, ... was employed by the U.S. Marshal Service to guard the defendant while he was hospitalized: specifically, paragraph 42 (6 point increase for victim related adjustment); paragraph 43 (2 point increase for victim related adjustment), paragraph 50 (6 point increase for victim related adjustment); paragraph 51 (2 point increase for victim related adjustment); paragraph 59 (6 point increase for victim related adjustment); paragraph 66 (6 point increase for victim related adjustment); paragraph 67 (2 point increase for victim related adjustment). Accordingly, Mr. Gardner requests that this court remand for re-sentencing.

## CONCLUSION

The Appellant respectfully requests that this Court alternatively: vacate the convictions and sentences with prejudice to bar subsequent prosecution because of violations of the speedy trial rule; acquit with respect to all counts that pertain to 18 U.S.C. § 111, and/or remand for re-sentencing.

Respectfully submitted,

/S/ Lydia M.V. Brandt

Lydia M.V. Brandt
THE BRANDT LAW FIRM, P.C.
Texas Bar No. 00795262
P.O. Box 850843
Richardson, Texas 75085-0843
(972) 699-7020 Voice; (972) 699-7030 Fax
COUNSEL FOR APPELLANT

/S/ Lydia M.V. Brandt

Lydia M.V. Brandt

## CERTIFICATE OF SERVICE

I, Lydia M.V. Brandt, certify that pursuant to FED. R. APP. PROC. 31, on March 19, 2007, I caused two (2) copies in print format, and one copy in electronic format, of the foregoing to be mailed to:

28

Ms Susan Cowger,
United States Attorney,
1100 Commerce Street, Third Floor,
Dallas, Texas 75242


/S/ Lydia M.V. Brandt

Lydia M.V. Brandt, Esq.


cc:    Mr. Roy Gene Gardner
       Inmate #20040-077
       USP Beaumont
       U.S. Penitentiary
       P.O. Box 26030
       Beaumont, TX 77720

29

# EXHIBIT B

Document Filed Concurrently Under Seal